In re Roland L. ROBINSON, Debtor.

Elaine H. SEMROW, Plaintiff,

v.

Roland L. ROBINSON, Defendant.

Bankruptcy No. 89–53659–C.
Adv. No. 90–5093–C.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Dec. 6, 1990.

cree. The matter arises under Section 523(a)(5) of the Bankruptcy Code, and, pursuant to 28 U.S.C. Section 157(b)(2)(I) this matter is a core proceeding. This court has original subject matter jurisdiction over the matter pursuant to 28 U.S.C. Section 1334 and may enter a final order with respect thereto. 28 U.S.C. § 157(c)(2).

## DISCUSSION

The sole issue to determine is whether the monthly payments, as referenced in a certain divorce decree, are in the nature of alimony, support and maintenance and therefore nondischargeable under 11 U.S.C. Section 523(a)(5) or if such payments are more properly characterized as a form of property settlement and, hence, dischargeable under 11 U.S.C. Section 727.

## FACTUAL BACKGROUND

Roland Robinson and Elaine Semrow were divorced in September 1981. They were both represented by the same lawyer, who drafted up an agreement incident to the divorce. Such agreements in Texas typically provide for the division of property, custody of any children (and child support arrangements), and, on occasion, contractual alimony.[1] This agreement contained the following language:

Richard H. Ifhe, Ifhe & Raleigh, P.C., San Antonio, Tex., for plaintiff.

Bernie Martinez, San Antonio, Tex., for defendant.

## MEMORANDUM DECISION

LEIF M. CLARK, Bankruptcy Judge.

CAME ON for consideration the objection of Defendant Debtor to the nondischargeability claim asserted by Plaintiff. Upon consideration of the evidence presented, the arguments of counsel and the pleadings in the matter, the court enters this its decision and order.

## JURISDICTION

This case involves the dischargeability of certain payments incident to a divorce de-

1.06 *Division of Property.* The parties have carefully considered the nature and extent of their properties, together with their future individual needs for support (emphasis added), the difference between their earning powers, and other relevant factors. The division of the parties' estate ... that is contained in this agreement is just and right, having due regard for the rights of each party and the child of the marriage.

.        .        .        .        .

2.01 *Property Settlement.* It is the purpose of this agreement to settle forever and completely the rights of the parties, as between themselves and their

---

**1.** Texas law does not permit courts to *order* alimony. *Mackey v. Mackey,* 721 S.W.2d 575, 578 (Tex.App.—Corpus Christi 1986, no writ). The parties may *contract* for alimony as part of

their agreement incident to divorce. The agreement is incorporated by reference in the divorce decree, and is thus enforceable by the court.

heirs and assigns, in and to all property, including assets, debts, and obligations....

. . . . .

3.01 *Property of Wife.* The parties agree that Wife shall own, possess, and enjoy, free from any claim of Husband, the property listed in Schedule 1 of this agreement, and the future sums to be paid by Husband....

3.02 *Property of Husband.* The parties agree that Husband shall own, possess and enjoy, free from any claim of Wife, the property listed in Schedule 2 of this agreement.

. . . . .

4.02 *Partition and Assignment of Interests.* As part of the partition of the estate of the parties, Wife agrees to and does hereby transfer and assign to Husband any and all sums ... and any other rights related thereto, if as and when paid by [former employer] as pension, profit-sharing, retirement, or other employee benefits existing because of Husband's past employment.

The schedules attached to the agreement awarded virtually all of the property to the husband, including a house in an upscale neighborhood in which the couple had approximately $50,000 in equity. The wife received her car and the following sums of money to be paid over as described:

a. The sum of $4,000.00 in cash when the Decree of Divorce is granted;

b. The sum of $300.00 per month for each and every month beginning July 1, 1981 and continuing for 120 months;

c. The sum of $25,000.00 in cash upon the end of ten years following the Decree of Divorce.

Only the husband/debtor testified at the hearing. Ms. Semrow currently lives in Janesville, Wisconsin. According to Robinson's testimony, the parties' intentions at the time of the divorce were clear: she wanted one-half the estate, and he did not have the cash to pay her one-half the value, so they agreed that he would pay her the value of her one-half interest over time, per the arrangements in Schedule 1 (see above).

The structure of the agreement is derived from a standard Texas form, and is designed to comply with a Texas Family Code provision that requires that a property division be "just and right" in order to be approved by the court. The form also is designed to accommodate the peculiarities of Texas law relating to the payment of contractual alimony, and the requirements of the Internal Revenue Service relative to the characterization of payments as alimony for tax deduction purposes.[2]

Prior to the divorce, Robinson made a fairly good income from his employment (though the evidence failed to reflect just what that employment was, precisely). His wife was a waitress both before and after their marriage. The parties agreed that Robinson would retain custody of their only child (who was then 13), and that Semrow would not have to pay child support.

After the divorce, Robinson made the first $4,000 payment (and perhaps some of the monthly payments as well although the record is incomplete on this point) and did not take a deduction on his income tax return for that year. He made the $300 monthly payments in 1982, 1983, and 1984, and treated the payments as alimony on his income taxes for those years, taking a deduction for them. Some time in 1985, he ceased making the payments altogether. He did not take a deduction for payments he did make in 1985 on his 1985 tax return. Robinson pointed out that he changed accountants that year. He adds that it was his tax accountant who told him to treat the payments he was making to his ex-wife as alimony for tax purposes. Semrow's attorney did not introduce any evidence to show whether Semrow characterized her

---

**2.** Alimony is deductible from the gross income of the spouse making the payment. 26 U.S.C. § 215. Alimony is reportable income to the spouse receiving such alimony. 26 U.S.C. § 71.

Payments made incident to a property settlement are neither deductible by the payor nor income to the recipient. *Schatten v. United States,* 746 F.2d 319 (6th Cir.1984).

receipt of these payments as income for the years 1982–84.[3]

Robinson's income began to drop in 1986 and eventually his economic situation deteriorated to the point that he was reporting less than $10,000 in annual income. Meanwhile, Semrow initiated litigation against Robinson for what she now called alimony payments. A judgment was ultimately entered in her favor shortly before the bankruptcy filing.[4] This litigation followed.

## ANALYSIS

Semrow, the plaintiff and ex-wife in this case, claims that the agreement incident to the divorce, coupled with Robinson's characterization of the payments he made in 1982–84 as alimony on his income tax returns for those years, are dispositive on the issue of dischargeability under Section 523(a)(5). Robinson, the defendant, debtor and ex-husband in this case, counters that the actual intent of the parties is controlling, and that the agreement itself clearly indicates an effort to split up the property, with Semrow taking her half in cash over time.

## FINDINGS AND CONCLUSIONS

[1–3] The determination of whether a claim is for support obligation or part of a property settlement is a question of federal bankruptcy law, not state law, although state law concerns are not to be ignored. *Biggs v. Biggs (Matter of Biggs)*, 907 F.2d 503 (5th Cir.1990); *Erspan v. Badgett*, 647 F.2d 550, 554 (5th Cir.1981); *In re Holland*, 48 B.R. 874 (Bankr.N.D.Tex.1984); *Moses v. Moses*, 34 B.R. 378 (Bankr.S.D. Tex.1983). The primary issue in determining whether the obligation is for support and maintenance or part of a property division is the intent of the parties. *In re Billingsley*, 93 B.R. 476, 477 (Bankr.N.D.

Tex.1987). The courts have established a list of factors to be considered in determining the intent of the parties. Due to the courts limited record, as a result of the limited financial resources of both of the parties, not all of the factors discussed in *In re Billingsley* can be applied. *See id; In re Davidson*, 104 B.R. 788, 794 (Bankr. N.D.Tex.1989). These factors, in part, are: 1) the length of the marriage; 2) whether there are minor children in the care of the creditor spouse; 3) the parties' standard of living during the marriage; 4) the financial resources of each spouse, including income from employment or elsewhere; 5) whether the payments were made periodically, or over an extended period, or in a lump sum; 6) whether payments were fashioned in order to balance the disparate income of the parties; 7) the ages, health, work skills, and educational level of the parties; and 8) whether the terms of the settlement agreement indicated that the agreement was support, rather than property division. It is also important to note that the determination of whether support or a property settlement is involved must be made on a case by case basis. *In re Elder*, 48 B.R. 414, 417 (Bankr.W.D.Ky.1985).

Although the record is too sparse to apply all the factors outlined, the court feels that the record is adequate to justify this court's ruling. The terms of the settlement agreement itself, specifically paragraph 1.06 of the agreement, indicate that the payments were to be in the nature of support. The court is unpersuaded by the "property settlement" language in the agreement, as Semrow received virtually nothing up front but rather was to receive the majority of the cash distribution over a ten year term.

---

**3.** Both parties lacked the financial resources to heavily litigate this case. The court infers from Ms. Semrow's absence that even the price of a plane ticket from Janesville, Wisconsin to San Antonio, Texas was enough of an economic barrier to keep her from attending the trial.

**4.** The record is spotty on a couple of points here that, as it turns out, are not material to the disposition of the case. Robinson contends that

he was never served with the suit and so knew nothing about it. A lawyer evidently appeared ostensibly on his behalf and a ruling was made on a motion for summary judgment, but Robinson denies that he ever hired a lawyer to represent him in the matter. The litigation was not reflected in Robinson's schedules, though he evidently was aware of the judgment before he filed bankruptcy.

It would be inequitable to characterize the agreement as a property settlement. Other assets were available in which Semrow could have received an interest (e.g. equity in home), yet Semrow received only a promise of future payments, a promise of support. The record indicates that Semrow was lacking in the appropriate work skills and education to fully support herself over the ten year term at the standard of living she had grown accustomed to during the marriage. These facts are indicia of support. *Billingsley*, 93 B.R. at 477.

The record also indicates that Robinson, during certain tax years, treated the agreement as providing for alimony for Robinsons' own tax purposes. That is, Robinson took a tax deduction for alimony in 1982, 1983 and 1984. This tax treatment is an indication of the alimony nature of the agreement. *Miller v. Kinsley*, No. SA–85–CA–3223 (W.D.Tex. March 10, 1989) (Garcia, D.J.); *see also In re Bell*, 61 B.R. 171 (Bankr.S.D.Tex.1986). Robinson should be estopped from now asserting these payments were mere property settlement, based upon his own characterization of the payments as alimony in his tax returns.

THEREFORE, pursuant to 11 U.S.C. Section 523(a)(5), this court holds that the claim in issue is in the nature of "alimony, maintenance, or support" and is therefore nondischargeable.

All findings may be construed as conclusions, and vice versa.

Judgment will be entered consistent with this decision.